```
                                                      Pages 1 - 15

                  UNITED STATES DISTRICT COURT

                NORTHERN DISTRICT OF CALIFORNIA

             BEFORE THE HONORABLE CHARLES R. BREYER

IN RE:  BEXTRA AND CELEBREX         )
MARKETING SALES PRACTICES AND       ) No. MDL 1699 CRB
PRODUCTS LIABILITY, ET AL,          )
                                    ) No. C05-3902 CRB
                                    ) No. C06-0517 CRB
                                    ) No. C11-0310 CRB
                                    )
                                    ) San Francisco, California
------------------------------------) March 22, 2012


                   TRANSCRIPT OF PROCEEDINGS

APPEARANCES:

For Plaintiff           LIEFF, CABRASER, HEIMANN
Liaison:                 & Bernstein
                        275 Battery Street, 30th Fl.
                        San Francisco, California  94111
               BY:      SCOTT NEALEY, ESQ.


For Healthcare          YUNG & KEITHLY, LLP
Services Corp:          208 N. Market Street
                        Suite 200
                        Dallas, Texas 75202
               BY:      ANDREW YUNG, ESQ.




For Defendant           DLA PIPER
Pfizer:                 33 Arch Street
                        26th Floor
                        Boston, Massachusetts 02110
               BY:      MATTHEW HOLIAN, ESQ.


            (APPEARANCES CONTINUED ON FOLLOWING PAGE)

Reported By:   Debra L. Pas, CSR 11916, CRR, RMR, RPR
               Official Reporter - US District Court
               Computerized Transcription By Eclipse
```

```
 1  APPEARANCES:   (CONTINUED)

 2  For Defendant              SKADDEN, ARPS, SLATE, MEAGHER & FLOM
    Pfizer:                    1440 New York Avenue, NW
 3                             Washington, DC 20005
                         BY:   JOHN BEISNER, ESQ
 4

 5


 6  For State of               DUGAN LAW FIRM
    Louisiana:                 365 Canal Street
 7                             Suite 1000
                               New Orleans, Louisiana 70130
 8                       BY:   JAMES R. DUGAN, ESQ.

 9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25
```



*Debra L. Pas, CSR, CRR, RMR, RPR*
*Official Reporter - U.S. District Court - San Francisco, California*
*(415) 431-1477*

```
 1                        P R O C E E D I N G S
 2   MARCH 22, 2012                                        10:04 a.m.
 3
 4            THE CLERK:  Calling case MDL-1699, In Re Bextra and
 5   Celebrex Marketing Sales Practices, and case C05-3902, C06-0157
 6   and 11-0310.
 7            Appearances counsel.
 8            MR. NEALEY:  Scott Nealey from Lieff, Cabraser for
 9   the plaintiff liaison and the plaintiffs' steering committee.
10            MR. HOLIAN:  Matt Holian from DLA Piper on behalf of
11   Pfizer.
12            THE COURT:  Good morning.
13            MR. HOLIAN:  Good morning, your Honor.
14            THE CLERK:  Counsel?
15            MR. DUGAN:  Good morning your Honor.  John Dugan from
16   the Dugan law firm on behalf of the State of Louisiana and the
17   Louisiana Attorney General.
18            MR. YUNG:  And, your Honor, Andrew Yung, from Yung
19   Keithly on behalf of Healthcare Service Corporation.
20            MR. BEISNER:  Good morning, your Honor.  John
21   Beisner.  I'm here on behalf of Pfizer in the case to be argued
22   this morning.
23            THE COURT:  Okay.  Before we get to the argument
24   maybe we should take a status report and see where we are on
25   these matters.
```

1        Mr. Holian?

2        **MR. HOLIAN:** Yes, your Honor. Matt Holian for
3   Pfizer.

4        There are a total of five cases remaining on the
5   Court's docket; three of them are personal injury cases, two of
6   them are the purchase claim cases. Several of those matters
7   are on calendar for today.

8        There are two new cases that were recently
9   transferred to this Court, personal injury cases. The Mosby
10  case and the Scott case. Those will be subject to Pretrial
11  Order No. 31, the Loan Pine order, and we expect to be before
12  the Court in a series of months depending on how that process
13  works out.

14       There is another personal injury case not yet
15  transferred to this Court, the Stone Hill case, for which the
16  judicial panel on Multi District Litigation is rendering a
17  decision without oral argument at the end of the month.

18       But that case, also, if it is transferred here, would
19  be subject to Pretrial Order 31.

20       The other three cases are on the Court's agenda for
21  today. The Bolwell Davis case is on for an order to show cause
22  for dismissal. The HCSC case is on for hearing on the motion
23  to dismiss. And the Foti case is on for discussion of the
24  discovery that's necessary.

25       **THE COURT:** Okay. Why don't we -- the three cases

```
 1  that are on the calendar, let's proceed with those.
 2              MR. HOLIAN:  Sure.  Would the Court prefer to discuss
 3  the Bolwell Davis order to show cause first?
 4              THE COURT:  Yes.
 5              MR. HOLIAN:  So, just this morning after having an
 6  agreement in principle for 15 months, we finally received the
 7  settlement paperwork for the Bolwell and Davis plaintiffs.
 8              As the Court knows, plaintiffs who are Medicare
 9  eligible have to obtain some documentation from Medicare
10  resolving any potential lien interest that Medicare may have in
11  the settlement.  That process typically takes around six
12  months.
13              In the interests of keeping the Court's docket
14  focused on the cases that are being actively litigated, we have
15  very often reached agreements with the plaintiffs' counsel to
16  dismiss the cases pending the receipt of that documentation and
17  if, for any reason, we aren't able to finalize the settlement,
18  then we would agree to vacate the dismissals and reopen the
19  case on the docket.
20              Our preference is to do the same in this case, but
21  plaintiffs' counsel has not consented to that.
22              THE COURT:  Be that as it may, since you've
23  represented to me that the case has been settled in principle,
24  I'm going to dismiss the action subject to the Court being
25  advised by either party that the settlement has not been
```

1  achieved or consummated.  And I will put this -- I will give
2  you a long lead time, so if either counsel advises the Court
3  within nine months that the case has not been resolved, I will
4  restore it to the calendar.  So it's dismissed under those
5  circumstances.
6          **MR. HOLIAN:**  Very well.  We'll prepare a proposed
7  order with those terms, your Honor.
8          The HCSC case, I believe, you'll hear argument on in
9  a few moments.
10         The Foti case is the purchase claim case brought by
11 the State of Louisiana  And the parties have discussed the
12 discovery that should be done and I think we may have some
13 disagreements about that, but I suspect we may be able to work
14 on a discovery plan that focuses on the things we really need
15 to focus on in light of all the discovery that has already been
16 provided to the plaintiffs' steering committee by Pfizer and in
17 light of some discovery that the State of Louisiana provided in
18 connection with a similar claim against Merck in the Vioxx
19 litigation.
20         **THE COURT:**  And I think I have counsel on the line,
21 is that correct, on the, from Louisiana?
22         **MR. DUGAN:**  That's correct, your Honor.  Good
23 morning.
24         **THE COURT:**  Good morning.  And what discovery is it
25 that you intends to pursue at this point?

*Debra L. Pas, CSR, CRR, RMR, RPR*
*Official Reporter - U.S. District Court - San Francisco, California*
*(415) 431-1477*

```
 1            MR. DUGAN:  If I may, your Honor.  It's the State of
 2   Louisiana's position -- I know you're aware that there is a
 3   remand order and so our first position is that the remand
 4   jurisdictional issue be dealt with prior to discovery.
 5   However, we are very aware of our obligations under lexicon and
 6   the MDL panel rules.
 7            If the Court does not want to entertain remand, we
 8   think a focused discovery plan that gets to issues that are
 9   fairly unique to governmental plaintiffs, as opposed to the
10   third-party payor discovery or the personal injury discovery
11   that was the focus of prior discovery in the MDL.
12            THE COURT:  Go head.
13            MR. DUGAN:  That primarily would consist of finding
14   out -- and we have had preliminary discussions with both the
15   PSC and defense counsel.
16            Both had been produced prior and would be pertinent
17   to our case, as well as to get a handle on what was produced to
18   the federal government in the course of their investigation.
19   And, finally, to get what's called call notes and/or detail or
20   data base for sales representatives who called upon Louisiana
21   doctors.
22            Finally, we understand that the production of
23   documents in depositions that was undertaken during the MDL is
24   primarily of custodial files and then depositions of those
25   custodians.  We would like to get the identities of the sales
```

```
 1  reps and their managers, if any, who were responsible for the
 2  Louisiana Medicaid program.
 3          THE COURT:  Okay.  Well, some of those I think -- I
 4  think you -- it would be useful.
 5          Let me tell you my general philosophy here and then
 6  I'm going to allow the lawyers, you and Pfizer, to come up with
 7  a plan.
 8          But in the first instance I think I want you to look
 9  at all the documents that have been accumulated that you
10  believe would be -- you believe would be relevant to pursuit of
11  your claims.  If it's been done, you take a look at it and see
12  what it is.  That's a starting off point.  I don't want to
13  recreate that discovery, and it's available.
14              Secondly, I think that we're concerned here
15      for -- primarily, I would think about the contacts that
16      the State of Louisiana had with Pfizer representatives as
17      an example.  And so that's something that I think ought to
18      be pursued and given the highest priority.
19              Depending on what is determined in that phase of
20      discovery, there could be other discovery that would be
21      ordered.  But what I'm looking at is a structured way to
22      proceed.
23              You know, just so it's clear, I'm not ordering a
24      remand.  So we're going ahead on discovery.  And what I
25      want you to do is meet-and-confer with Pfizer counsel on a
```

```
 1        discovery plan and see where you can agree and where you
 2        disagree.  And where you agree, that's fine.  You can
 3        incorporate it in an order.  And where you disagree, each
 4        of you should present in writing a form of order with a
 5        very brief -- and I want to emphasize brief -- argument as
 6        to why the other side's order doesn't make sense or it
 7        should be amplified or it should be in some manner
 8        rewritten and then I'll rule on it.
 9                And my question is:  How long will that process
10        take?  Do you want, realistically, 30 days?
11            MR. HOLIAN:  I think that would be useful, your
12 Honor, so we can assess what it is that we have.
13            THE COURT:  There may be some going back-and-forth
14 and then simply submit something in writing within 30 days,
15 okay?
16            MR. HOLIAN:  Thank you, your Honor.
17            MR. DUGAN:  That's very acceptable to plaintiffs.
18            THE COURT:  So I think that finishes the Louisiana
19 case at this point, and we'll return to it.
20                So that leaves with us what else?
21            MR. HOLIAN:  The Healthcare Services Corporation
22 case.
23            THE COURT:  Right.  Is that all -- that's the only
24 other than matter?
25            MR. HOLIAN:  It is, your Honor.
```

1           **THE COURT:**  Okay.  So I would like to hear some brief
2   argument on that, if I might.
3           **MR. BEISNER:**  John Beisner on behalf of Pfizer.
4           Good morning, your Honor.  We have moved to dismiss
5   this case because, in our view, no matter how you look at it,
6   it simply does not state a viable cause of action.
7           In this action plaintiff HCSC seeks to recover money
8   it spent on Bextra and Celebrex prescriptions for its insureds,
9   but we believe the complaint is missing two key elements.
10          One, allegations that properly show causation; and,
11  two, allegations that properly show injury under the various
12  causes of action that are alleged.
13          And the key problem is that nowhere in the 115
14  paragraphs that are in the complaint does HCSC allege that
15  Pfizer made any specific misrepresentations to HCSC about the
16  products or that HCSC made its decision to cover these products
17  in reliance on anything that Pfizer said.
18          And, in addition, nowhere does HCSC allege that these
19  products were not efficacious; that they were ineffective.
20  Indeed, what they are asking for is a complete windfall.  It
21  doesn't allege here that it had to pay for any replacement
22  products here and that any of the users of the product didn't
23  get the relief that they thought that they should relieve.
24          Your Honor, there has been a large number of cases
25  like this filed in recent years and the pattern seems to be

1   that when product liability allegations are made with respect
2   to a pharmaceutical product, at some point shortly thereafter
3   third-party payors will file actions saying that
4   representations have been made that have caused additional
5   prescriptions to be written for the product or have caused
6   physicians to migrate to more expensive products, allegations
7   such as those have been made here.
8           And Federal Courts have pretty consistently become
9   very skeptical of those claims, I think, out of a concern that
10  if any time product liability allegations are made, there is a
11  demand for refund.  There really isn't a rationale for that.
12          Most recently Judge Folsom, who had a case -- has a
13  case very much like this one brought by the same plaintiff,
14  dismissed it and -- and that action was brought with respect to
15  other Pfizer medicines, basically holding that the fact that
16  the TPP was claimed to have paid for more expensive medicine
17  didn't constitute injury and that the various allegations that
18  were very similar to those made here simply didn't allege
19  causation.
20          Your Honor, I want to focus briefly on two aspects
21  here:  One is causation and one is injury.
22          The problem with the causation allegations here are
23  that under RICO, under the Supreme Court precedents, there is a
24  need for a pretty immediate cause.  There needs to be real
25  proximate cause that's alleged in the complaint.  And the

1  plaintiffs in these cases go one or two or both directions.
2  One is to talk about representations were made directly to the
3  TPP that may have affected decisions as to whether to put the
4  drug on the formulary.  The latter approach is to say, you made
5  representations to physicians and to the public that affected
6  decision making that was made with respect to the
7  prescriptions.
8           The latter approach, your Honor, has uniformly been
9  found not to work under RICO because it's simply too
10 attenuated.  At the end, as Judge Weinstein found in the
11 Ciproxin case it's a class action, in essence, even though
12 there is only one claimant involved.  You have to go through
13 and look at each prescription to see why did the doctor make
14 this particular decision and what, if anything, may have
15 affected that.  It may have had nothing to do with the
16 representations that were made.
17          Under the former alternative, those allegations need
18 to be made pretty directly.  They need to show some pretty
19 direct impact on the formulary decision.  And since these are
20 claims sounding in fraud, they need to be made with
21 particularity under 9(b).
22          And the problem in this case is they are simply not
23 there.  The allegations don't talk about --
24          **THE COURT:**  Well, I wonder.  To sort of cut through
25 this.  I agree with all of that.  The question in my mind is

```
 1  whether they can be amended.
 2          So maybe I should hear -- assuming that I, which I
 3  do, agree with this complaint is defective or deficient in that
 4  it doesn't successfully allege causation and injury, where --
 5  if I give you leave to amend, will you be able to, do you
 6  think, overcome that problem or is it pretty much all here now
 7  and you're willing to ride with the complaint as written?
 8          I give you that choice.  I'm not forcing you -- I'm
 9  not forcing you to rewrite a complaint.  I know you think it's
10  adequate as it's written.  That's a position that you're
11  certainly entitled to hold, but I'm going to grant the motion
12  and give you leave to amend if you feel you can -- if you feel
13  you can amend.
14          MR. NEALEY:  I think it is, your Honor, important to
15  have an opportunity to amend.
16          THE COURT:  Okay, fine.  That's exactly what I'm
17  going to do and then it will come up again.  We'll have the
18  argument in your final -- except the negligence claims.  They
19  are out, but I will allow you leave to amend on the other cause
20  of actions.  Give it your best shot and we'll see where we are
21  at the end of it.
22          How much time do you need?
23          MR. YUNG:  21 days, your Honor.
24          THE COURT:  I will give you 30 days leave to amend.
25  Thank you very much.
```

```
 1              (Whereupon, further proceedings in the
 2           above matter were adjourned.)
 3                          --oo--
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
```

**CERTIFICATE OF REPORTER**

 I, DEBRA L. PAS, Official Reporter for the United States Court, Northern District of California, hereby certify that the foregoing proceedings in MDL 1699 CRB, IN RE: BEXTRA and CELEBREX MARKETING SALES PRACTICES and PRODUCTS LIABILITY, et al were reported by me, a certified shorthand reporter, and were thereafter transcribed under my direction into typewriting; that the foregoing is a full, complete and true record of said proceedings as bound by me at the time of filing.

 The validity of the reporter's certification of said transcript may be void upon disassembly and/or removal from the court file.

_____

Debra L. Pas, CSR 11916, CRR, RMR, RPR

Friday, May 11, 2012